**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MAMADOU DIALLO,                     :
                                                        Civil Action No. 10-4656 (JAP)
                    Petitioner,      :

                    v.               :      **OPINION**

ERIC HOLDER, et al.,                :

                    Respondents.    :


**APPEARANCES:**

Petitioner pro se                    Counsel for Respondents
Mamadou Diallo                       Theodore William Atkinson
MCCI                                 U.S. Dept. of Justice
1 Waterworks Road                    Off. of Immigration Litigation
Freehold, NJ 07728                   P.O. Box 868
                                     Ben Franklin Station
                                     Washington, DC 20044


**PISANO**, District Judge

        Petitioner Mamadou Diallo, an alien detainee presently

confined at Monmouth County Correctional Institution in

Freeholde, New Jersey, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The named

───────────────

        [1] Section 2241 provides in relevant part:

        (a) Writs of habeas corpus may be granted by the
        Supreme Court, any justice thereof, the district courts
        and any circuit judge within their respective
        jurisdictions.
        (c) The writ of habeas corpus shall not extend to a
        prisoner unless-- ... (3) He is in custody in violation
        of the Constitution or laws or treaties of the United
        States ... .

Respondents are Attorney General Eric Holder, Homeland Security Secretary Janet Napolitano, Field Office Director Christopher Shanahan, and Warden William Fraser.

Because it appears from a review of the Petition that Petitioner is not entitled to relief, the Petition will be dismissed.  See 28 U.S.C. § 2243.

## I.  BACKGROUND

Petitioner Mamadou Diallo is a citizen and national of Guinea who entered the United States on February 17, 2004, using a Guinean passport under the name Mohamed Camara, but without a valid entry document.

On June 17, 2004, Petitioner filed an application for asylum and for withholding of removal which was referred to an immigration judge.  Thereafter, Petitioner was served with a Notice to Appear charging him under the Immigration and Nationality Act Section 237(a)(1)(A) for not having a valid entry document.  At his immigration hearing, Petitioner testified that his parents still resided in Guinea, but that his brother Alfa Omar Diallo had immigrated to the United States.  Petitioner testified that he had posed as the son of a family friend, Mr. Camara, to obtain a passport under the name Mohamed Camara.  In support of his application for asylum, Petitioner presented the asylum application of his brother, Alfa Omar Diallo, which was somewhat inconsistent with Petitioner's testimony.

2

On December 15, 2005, the immigration judge denied Petitioner's Applications for asylum and withholding of removal, found him removable, and ordered him removed to Guinea. Petitioner successfully appealed to the Board of Immigration Appeals, which remanded the case back to an immigration judge for further proceedings.

On May 7, 2009, Petitioner and his brother both provided oral testimony. Nevertheless, the immigration judge once again ordered Petitioner removed to Guinea. On September 17, 2009, the BIA dismissed Petitioner's appeal. Petitioner did not further appeal order of removal, which became final thirty days later, on October 17, 2009.

On October 15, 2009, the Consulate General of Guinea interviewed Petitioner in connection with efforts to remove Petitioner. According to Respondents, in this interview, Petitioner stated that he had purchased his birth certificate under the name Mamadou Diallo, which he admitted was not his birth certificate. The Consulate General analyzed the birth certificate and determined that it was not authentic. The Consulate General also analyzed the passport bearing the name Mohamed Camara, determined that it was authentic, and determined that Petitioner was Mohamed Camara. Petitioner was provided with the paperwork to renew  his passport, under the name Mohamed

Camara; Petitioner, however, signed the passport renewal application with his assumed name Mamadou Diallo.

On November 4, 2009, the Consulate General of Guinea again interviewed Petitioner, because of the discrepancy with the names, and Petitioner asserted that his true identity is Mamadou Diallo.  Despite the multiple requests (allegedly 15) of immigration authorities, over a period of months, that Petitioner either complete the passport renewal documentation under the name the Consulate General considers authentic, Mohamed Camara, or that he provide authentic documentation to substantiate his identity as Mamadou Diallo, Petitioner has failed to satisfy either option.[2]

The Bureau of Immigration and Custody Enforcement has conducted for Post-Removal-Order custody reviews, on December 10, 2009, March 26, 2010, June 25, 2010, and September 23, 2010, at each of which immigration officials advised Petitioner that he was failing to cooperate in obtaining the necessary travel documents.

---

[2] With respect to the interviews with the Consulate General of Guinea, and the Consulate General's conclusions about the authenticity of Petitioner's documentation and of Petitioner's identity, the Court has only the representations of Respondents' counsel in the brief.  Respondents have not provided any records of those interviews, correspondence with staff at the Consulate General explaining the basis for their conclusions, or any case notes.  This Court is troubled by the Respondents' failure to provide any such documentary evidence, which would be highly relevant.  Because Petitioner does not dispute Respondents' representations, however, this Court accepts them.

Here, Petitioner seeks a writ of habeas corpus, asserting that his prolonged detention in lieu of removal violates his rights to due process and under 8 U.S.C. § 1231(a)(6), because his removal is not reasonably foreseeable in light of te Consulate General's refusal to issue travel documents in Petitioner's name.  Petitioner names as Respondents Attorney General Eric Holder, Homeland Security Secretary Janet Napolitano, ICE Field Officer Director Christopher Shanahan, and Warden William Fraser.

Respondents have responded with a motion to dismiss the Petition as against all Respondents except William Fraser, as they are not Petitioner's physical custodians, and with a request to deny the Petition on the grounds that Petitioner has refused to cooperate with efforts to remove him.  Petitioner has not responded.  This matter is now ready for decision.

II.  <u>ANALYSIS</u>

A.  <u>The Proper Respondent</u>

Respondents urge this Court to dismiss Eric Holder, Janet Napolitano and Christopher Shanahan from this action as improper respondents.

Among other things, 28 U.S.C. § 2242 requires the petition for a writ of habeas corpus to allege "the name of the person who has custody over [the petitioner]."  <u>See also</u> 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the

person having custody of the person detained."). "[T]hese provisions contemplate a proceeding against some person who has the <u>immediate</u> <u>custody</u> of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." <u>Wales v. Whitney</u>, 114 U.S. 5674, 574 (1885) (emphasis added).

> In accord with the statutory language and <u>Wales</u>'
> immediate custodian rule, longstanding practice
> confirms that in habeas challenges to present physical
> confinement - "core challenges" - the default rule is
> that the proper respondent is the warden of the
> facility where the prisoner is being held, not the
> Attorney General or some other remote supervisory
> official.

<u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 434-436 (2004) (citations omitted).[3]

In the context of alien detainees, the Court of Appeals for the Third Circuit has held,

> It is the warden of the prison or the facility
> where the detainee is held that is considered the
> custodian for purposes of a habeas action.  This is
> because it is the warden that has day-to-day control
> over the prisoner and who can produce the actual body.
> That the district director has the power to release the
> detainees does not alter our conclusion.  Otherwise,
> the Attorney General of the United States could be

---

[3] In <u>Padilla</u>, the Supreme Court also noted (1) the open
question whether the Attorney General is a proper respondent to a
habeas petition filed by an alien detained pending deportation
and (2) the implicit exception to the immediate custodian rule in
the military context where an American citizen is detained
outside the territorial jurisdiction of any district court.  542
U.S. at 435-36, n.8, 9.

> considered the custodian of every alien and prisoner in
> custody because ultimately she controls the district
> directors and the prisons.

Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994).  See also

Kholyavskiy v. Achim, 443 F.3d 946 (7th Cir. 2006) (citing Yi,

and reaching same result, after Padilla).

Thus, under the circumstances of this case, William Fraser,

the warden of the facility where the petitioner is held is the

proper respondent.  All other named Respondents will be

dismissed.

B.   Petitioner's Claim for Relief

Petitioner contends that his prolonged detention is unlawful

and a violation of his rights to procedural and substantive due

process.

Post-removal-order detention is governed by 8 U.S.C.

§ 1231(a).  Section 1231(a)(1) requires the Attorney General to

attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the
> following:
>
> (i) The date the order of removal becomes
> administratively final.
> (ii) If the removal order is judicially reviewed and if
> a court orders a stay of the removal of the alien, the
> date of the court's final order.
> (iii) If the alien is detained or confined (except
> under an immigration process), the date the alien is
> released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, interpreting the statute to avoid any question of a due process violation, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701.

However, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-

8

evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed.Appx. 919, 924 (3d Cir. 2003).

Respondents assert in their brief that Petitioner has failed to cooperate, and that his continued detention is therefore lawful.  Specifically, Respondents contend that Petitioner has asserted, at different times, that he is Mamadou Diallo or Mohamed Camara.  Petitioner admits that he refuses to complete passport renewal paperwork under the name that the Consulate General of Guinea has determined is Petitioner's correct identity: Mohamed Camara.

Unquestionably, in a situation such as this where Petitioner admits that he has asserted two different identities and has bought fraudulent identification documentation, admits that he has four living relatives in New York who might be able to assist in providing identifying information, and admits that he has two living parents in Guinea who might be able to assist in providing identifying information, he has failed to cooperate in his removal and has failed, in this Court, to establish that there is no likelihood of his removal in the reasonably foreseeable future.  Petitioner has made no effort, whatsoever, to explain why his six living relatives in Guinea and the United States

could not assist him in establishing his identity so that he could obtain removal papers.  He has made no effort to provide this Court, the Consulate General of Guinea, or the Bureau of Immigration and Customs Enforcement, with evidence that his true identity is Mamadou Diallo.  There is no statutory or due process violation in his continued detention as of this time.

However, as Respondents acknowledge, repatriation is a shared responsibility of the government and the alien.  Here, Petitioner has admitted having at least six living relatives in the United States and Guinea, yet the record is devoid of any effort to obtain information from any of them regarding Petitioner's true identity.  Respondents have advised this Court that the government of Guinea has made certain determinations about Petitioner's true identity.  Respondents have not explained, however, the rationale underlying those decisions or why they should be persuasive to the Bureau of Immigration Enforcement or to this Court.  With respect to the question of Petitioner's true identity, and the bearing of that issue on the questions of Petitioner's cooperation in his removal and of the legality of Petitioner's detention, this Court is not bound to find that such vague representations are fact.  Immigration officials bear some responsibility for themselves attempting to determine Petitioner's true identity, for articulating the specific information they require from Petitioner in connection

with that determination, for focusing their efforts on obtaining appropriate documentation and other information in order to expedite the removal or establish lack of cooperation, and for assisting Petitioner in acquiring that information.

This Court shall consider a renewed application for relief if, after full cooperation from Petitioner in meeting the government's clearly articulated requirements, the government remains unable to effectuate Petitioner's removal.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be dismissed as against Respondents Eric Holder, Janet Napolitano, and Christopher Shanahan and will be denied in all other respects.  An appropriate order follows.


                                    /s/JOEL A. PISANO
                                    JOEL A. PISANO
                                    United States District Judge

Dated: July 25, 2011

11